**E-FILED**
Thursday, 05 August, 2010  11:13:40 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| SEVILLE WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 10-CV-2096 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

Petitioner Seville Williams filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by  a Person in Federal Custody (#1) on May 3, 2010.  The government filed its Response (#5) on June 11, 2010, followed by Petitioner's Reply (#6) on July 13, 2010.  For the reasons cited below, Petitioner's Motion (#1) is DENIED.

### FACTS[1]

Petitioner, along with Brad Williams, Clinton Williams, Rory Tucker, and four others, was charged with committing a series of armed robberies over a four month period.  According to the government's evidence at trial, Brad Williams committed a series of armed robberies from January 3, 2006, through April 24, 2006.  He was accompanied and assisted by various people in these robberies, some of whom participated in more robberies than the others.  Petitioner was charged with having participated in two robberies: the January 3, 2006 robbery of a Walgreens drug store and the

---

[1]Some of the facts about Petitioner's arrest and jury trial are taken from the U.S. Court of Appeals for the Seventh Circuit's opinion on Petitioner's direct appeal, United States v. Williams, 553 F.3d 1073 (7th Cir. 2009).

January 11, 2006 robbery of the Commonwealth Credit Union. The January 3, 2006 robbery occurred when Petitioner, Brad Williams, and two other masked men entered a Walgreens, striking the attending pharmacist on the head and leaving with the money in a dark green bag. The robbery occurred around 2:30 am and at 2:45 am, Brad Williams, Petitioner, and two other men arrived at Nathein Franklin's apartment carrying a dark green bag and two revolvers. They changed in Franklin's bathroom and left the apartment. The January 11, 2006, robbery occurred at 5:40 pm when Petitioner and Brad Williams forced their way inside the Commonwealth Credit Union and held a gun to an employee's head while she unlocked the vault. They emptied the contents of the vault and fled in Clinton Williams's car.

Two other robberies occurred on March 28 and April 7, 2006, in which Petitioner did not take part. On March 27, 2006, an arrest warrant was issued for Petitioner in Case No. 06-CR-20026, relating to the January 11, 2006 Commonwealth Credit Union robbery. On May 5, 2006, Petitioner was indicted, along the other eight defendants, in Case No. 06-CR-20032. The indictment contained ten counts with various offenses arising from a series of armed robberies. Petitioner was charged in five of those counts: (1) conspiracy to commit robberies and to carry firearms during crimes of violence in violation of 18 U.S.C. § 371 (Count I); (2) one count of violation of the Hobbs Act (18 U.S.C. § 1951) concerning the armed robbery of the Walgreens store in Kankakee, Illinois (Count II); armed robbery of the Commonwealth Credit Union in Kankakee in violation of 18 U.S.C. § 2113(a) and (d) (Count IV); and two counts of carrying and using a firearm in connection with the armed robbery and armed bank robbery as charged in Counts II and IV, in violation of 18 U.S.C. § 924 (c) (Counts III & V).

At the jury trial, the government connected Petitioner to the January 3 Walgreens robbery

through the testimony of Nathein Franklin.  Franklin, who supplied Brad Williams with the code for

the robbery of the Walgreens, testified that he saw Petitioner with Brad immediately after the

robbery.  Petitioner, Brad, and two others went to Franklin's house after the robbery and changed

out of their dark clothing.

For the January 11 Commonwealth Credit Union robbery the government relied on the

testimony of two inmates.  Petitioner was arrested on January 19, 2006 and housed in the Winnebago

County Jail in Rockford, Illinois.  The inmates testified that Petitioner had described the robbery as

involving a female employee, and one of the inmates testified that Petitioner told him the robbery

occurred around closing time.  Juamual De-Quin Pitt testified that Petitioner claimed to have robbed

the place of around $300,000.  These details matched up with the details of the January 11 robbery,

which involved a female employee at a credit union who testified that one of the robbers held a gun

to her head at closing time while she unlocked the vault and emptied it of $313,785 in cash.  In

addition to the trial testimony of inmate Derrick Grace, the government introduced a tape recorded

conversation between Grace and Petitioner.

Petitioner was convicted on all counts and sentenced to a total of 546 months in the Federal

Bureau of Prisons, which broke down thusly: 60 months on Count I (conspiracy), 162 months on

each of Counts II and IV to be served concurrently (Walgreens robbery and the Commonwealth

Credit Union robbery), followed by 84 months on Count III (use of firearm during Walgreens

robbery) to be served consecutively to imprisonment on Counts I, II, and IV, and 300 months on

Count V (use of firearm during Commonwealth Credit Union robbery) to be served consecutively

to imprisonment on Count III and all other counts.

On direct appeal, Petitioner's appellate counsel filed an <u>Anders</u> brief under <u>Anders v.</u>

California, 386 U.S. 738 (1967) because counsel discerned no non-frivolous basis for appeal. Williams, 553 F.3d at 1085. The Seventh Circuit noted that, unlike the other defendants, the government's evidence against Petitioner was largely circumstantial. Williams, 553 F.3d at 1085. Still, while the evidence against Petitioner was weaker than the evidence against the other co-conspirators, the court found there was sufficient circumstantial evidence by which a jury could convict Petitioner. Williams, 553 F.3d at 1086. The court agreed with appellate counsel that there was no non-frivolous argument that could be made regarding sufficiency of the evidence. Williams, 553 F.3d at 1086. The Seventh Circuit also noted that Petitioner "argues that the introduction of [the recording made by fellow inmate Derrick Grace where Petitioner admits to the Commonwealth Credit Union robbery] violated his constitutional rights", but concluded that "[t]his is a frivolous argument because Grace consented to wear a wire and record his conversation with [Petitioner]." Williams, 553 F.3d at 1086, n. 7. Finally, the Seventh Circuit also found that the 546 month sentence was reasonable, as this court properly calculated the sentencing guidelines range and considered the appropriate 18 U.S.C. § 3553(a) factors and violent nature of the two robberies. Williams, 553 F.3d at 1086.

## ANALYSIS

### Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence

Petitioner's § 2255 Motion (#1) contains four grounds: (1) his counsel was ineffective for failing to seek a severance of only Count IV (the Commonwealth Credit Union robbery) from the remaining counts involving the Walgreens armed robbery; (2) his counsel was ineffective in challenging the authenticity of recorded conversations between Petitioner and government witness Derrick Grace; (3) his counsel was ineffective in not seeking an in-court voice exemplar to prove

it was Petitioner on Grace's recording; and (4) his counsel was ineffective for failing to challenge

his consecutive sentences of 84 months and 300 months imprisonment under 18 U.S.C. § 924(c).

Ineffective Assistance Standard

To establish ineffective assistance of counsel, Petitioner must prove that his counsel

performed in a deficient manner and that the deficiency prejudiced him.  Strickland v. Washington,

466 U.S. 668, 687-88 (1984).  Courts entertain a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance and is sound trial strategy.  Strickland,

466 U.S. at 689.  To show prejudice, Petitioner must show that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

Ground 1: Count IV Should Have Been Severed from the Other Counts

In his first ground, Petitioner argues that Count IV, the robbery of the Commonwealth Credit

Union (and also, presumably, Count V, the gun charge that stemmed from that robbery) should have

been severed from the other offenses in the indictment.  In his Reply, he also argues that Count IV

was "improperly joined" to the other charges. In response, the government argues that there is no

merit to Petitioner's claim that a spillover effect occurred because his case was joined with his co-

defendants at trial.  The government believes that all the charges and defendants were properly

joined because all their acts furthered the conspiracy.  Also, the trial court gave instructions to the

jury to consider the evidence and each defendant separately, thus no prejudice resulted to Petitioner.

Rule 14(a) of the Federal Rules of Criminal Procedure states:

"If the joinder of offenses or defendants in an indictment, an information, or

a consolidation for trial appears to prejudice a defendant or the government, the court

may order separate trials of counts, sever the defendants' trials, or provide any other

relief that justice requires."  Fed. R. Crim. P. 14(a).

The U.S. Supreme Court has held that  "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."  Zafiro v. United States, 506 U.S. 534, 538-39 (1993).  Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.

The Seventh Circuit has held that "[i]n all but the 'most unusual circumstances,' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'"  United States v. Alviar, 573 F.3d 526, 539 (7th Cir. 2009), citing United States v. Velasquez, 777 F.2d 1348, 1352 (7th Cir. 1985).  There is a strong preference that co-conspirators be jointly tried, especially when they were indicted together, because joint trials "'promote efficiency' and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  Alviar, 573 F.3d at 539, citing Zafiro, 506 U.S. at 537.  If a defendant has been convicted in a conspiracy based on evidence that would also have been admissible against him in a separate, lone trial, and the trial court instructed the jury to consider each co-defendant separately, no prejudice results from a spillover effect because the jury could distinguish between him and his co-defendants.  See Alviar, 573 F.3d at 539.

Here, Petitioner and his co-defendants were charged with conspiracy and all of the conduct charged in the substantive robbery and firearm charges related to acts in furtherance of that conspiracy.  The count Petitioner argues should have been severed (or never joined) was Count IV, the robbery of the Commonwealth Credit Union, as "without the inclusion of the additional charges,

-6-

there wouldn't have been sufficient evidence to convict this Defendant of the Commonwealth Credit Union robbery." However, the robbery of the Credit Union clearly furthered the conspiracy, as charged in Count I, to commit armed robberies. Petitioner committed the armed robbery with Brad Williams, the co-defendant who was involved in all of the other armed robberies charged. Further, the trial court gave an instruction to the jury that, even though the defendants were being tried together, the jury was to give each of them separate consideration. The jury instruction in question read in whole:

> "Even though the defendants are being tried together, you must give each of them separate consideration. In doing this, you must analyze what the evidence shows about each defendant, leaving out of consideration any evidence that was admitted solely against some other defendant or defendants. Each defendant is entitled to have his case decided on the evidence and the law that applies to each defendant."

Also, the court would refer Petitioner to the Seventh Circuit's rejection of a similar improper joinder/failure to sever claim made by his co-defendant, Rory Tucker. Tucker claimed that, because of his relatively minor role in the conspiracy, he should not have been tried with his co-defendants and the trial court erred in denying his motion to sever. First, the Seventh Circuit found joinder was proper, as the conspiracy charge sufficiently linked the various robberies for Rule 8(b) purposes. Williams, 553 F.3d at 1079. Even if the court found that misjoinder occurred, however, Tucker could not show actual prejudice, because

> "[t]here was sufficient evidence to convict Tucker...and the district court gave a limiting instruction both before the presentation of evidence and again at

closing arguments that the jury should consider the evidence regarding each

defendant separately.  Such instructions are normally sufficient to cure any

possibility of prejudice."  <u>Williams</u>, 553 F.3d at 1079.

The court finds that the Seventh Circuit's reasoning on Tucker's argument can be applied

to Petitioner's.  Petitioner's counsel was not ineffective for failing to sever Count IV from the

rest of the charges.  Thus, Petitioner's first ground must be denied.

<u>Grounds 2 & 3: Failure to Prove Authenticity of Recorded Conversation and Submit</u>

<u>Voice Exemplar</u>

Petitioner next argues that his trial counsel was ineffective for failing to challenge, on

evidentiary grounds, the admission of the taped recordings made by inmate Derrick Grace

between Grace and Petitioner where Petitioner admitted to the Commonwealth Credit Union

robbery.  Petitioner argues that the tape used was not properly authenticated and this "prejudiced

this Defendant by allowing the jury to infer guilt by improper evidence."  Petitioner points to the

Federal Rules of Evidence requirement that the government must prove by clear and convincing

evidence that the proffered tape is a true, accurate, and authentic recording of a conversation

between parties.  Petitioner believes that, though his trial counsel did argue that the only

eyewitness to the recording was the inmate informant, he was ineffective for making the

argument during trial, and not in a motion to suppress.  Petitioner also argues that counsel was

ineffective for failing to have an "in-court voice exemplar" submitted (voice analysis).  The

government argues that Petitioner's claims are frivolous.

Rule 901(a) of the Federal Rules of Evidence states:

"The requirement of an authentication or identification as a condition

-8-

precedent to admissibility is satisfied by evidence sufficient to support a finding

that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).

Under Rule 901(b)(5), voice identification can be authenticated in the following way:

> "Identification of a voice, whether heard firsthand or through mechanical
> or electronic transmission or recording, by opinion based upon hearing the voice
> at any time under circumstances connecting it with the alleged speaker."  Fed. R.
> Evid. 901(b)(5).

Petitioner claims, in a conclusory fashion, that his voice was not on the recordings, and

that counsel failed to challenge the recordings by filing a motion to suppress or to have an "in-

court voice exemplar" submitted.  However, the Seventh Circuit has held that voice

identification may occur based on minimal familiarity and has characterized this minimal

familiarity as a "low bar."  United States v. Neighbors, 590 F.3d 485, 493 (7th Cir. 2009).

Petitioner admits that the government presented a recorded conversation identified by Derrick

Grace as being between himself and Petitioner.  Grace served as an inmate with Petitioner and

identified both himself and Petitioner on the tape, thus meeting the "low bar" required for

authentification purposes.  See Neighbors, 590 F.3d at 493.  This court agrees with the

government that Petitioner's conclusory allegations that his voice was not on the recording or

that counsel should have obtained a voice exemplar are wholly insufficient to establish that his

counsel acted unreasonably or that but for counsel's actions, the outcome of the trial probably

would have been different.  It was not objectively unreasonable for defense counsel to argue

against the recording during trial, as opposed to in a motion to suppress.  Thus, Petitioner's

second and third grounds are denied.

Ground 4: Petitioner's Sentence

In his final ground, Petitioner argues that his counsel was ineffective in failing to argue that a sentencing court is precluded from imposing an additional mandatory minimum consecutive sentence under § 924(c) if that sentence would be shorter than a larger statutory minimum sentence under another count of conviction, including the underlying crime of violence or drug offense.  Essentially, Petitioner argues he should not have had the 84 month sentence on Count III imposed to run consecutively when a 300 month sentence was already imposed under § 924(c) in Count V.  Petitioner's argument is meritless.  Separate convictions under § 924(c) must run consecutive to each other and any other convictions for crimes of violence.  18 U.S.C. § 924(c)(1)(A); United States v. Fontanilla, 849 F.2d 1257, 1258 (9th Cir. 1988).  Further, the Seventh Circuit in Petitioner's direct appeal commented that Petitioner's 546 month sentence "was not unreasonable" and that "the district court properly calculated the sentencing guidelines range and considered the section 3553(a) factors."  Williams, 553 F.3d at 1086.  Petitioner's sentence was properly calculated and imposed, and thus no ineffective assistance of counsel occurred on this ground.

Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts, this court declines to issue a Certificate of Appealability.  Petitioner has not made substantial showing of the denial of a constitutional right as she has not shown that jurists of reason would find it debatable whether her petition states a valid claim of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED:

-10-

(1) Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by  a Person in Federal Custody (#1) is DENIED.

(2) A Certificate of Appealability is DENIED.

(3) This case is terminated.

ENTERED this 5th day of August, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE